UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V.                       ) | CRIMINAL NO. 04-10058-MEL |
| ) | |
| CHRISTOPHER LOGRASSO     ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Before addressing the departure arguments of defendant Christopher Lograsso ("Lograsso"), the government will briefly address the facts of this case and Lograsso's objection to the five-level enhancement that is applicable in this case pursuant to U.S.S.G. §2G2.2(b)(2)(B).

Section 2G2.2(b)(2)(B) is applicable in a child pornography distribution case when the distribution involves the receipt or the expectation of receipt of a thing of value (but not pecuniary gain) for the distributed child pornography. Application Note 1 explains that distribution for receipt or expectation of receipt of a thing of value (but not pecuniary gain) "means any transaction, including bartering or other-in-kind transaction." The Application Note goes on to say that in a situation where child pornography is bartered, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.[1]

---

[1] Although the Application Note addresses only a bartering of child pornography for child pornography, the result would be the

To understand that Lograsso is subject to the five-level enhancement of §2G2.2(b)(2)(B), one must first understand the concept of a F-serve, the software application that Lograsso maintained on his computer system. An F-serve is a bartering system that is controlled by the individual who maintains the system, in this case, Lograsso. It provides anyone with an Internet connection and the correct "trigger command" access to the computer files on the computer system maintaining the F-Serve. The "trigger command" is available to anyone who sees the "advertisement" for the F-serve. Thus, Lograsso could target the audience, based upon the particular interests of the audience, that he wanted to know about his F-serve. Here, Lograsso advertised his F-serve in a chatroom entitled #0!!!!!!!!!!!preteen101. Thus, despite Lograsso's attempt to portray himself as a collector of adult pornography, with only a small quantity of child pornography in his collection, he advertised his F-serve in a chatroom dedicated to child pornography.[2]

---

same even if the defendant received only adult pornography in return for the child pornography he distributed. Adult pornography is every bit as much a "thing of value" as child pornography.

[2] He may have advertised his F-serve in other chatrooms as well, including those dedicated to persons interested in adult pornography. However, the one chatroom that the government knows with certainty that was targeted by Lograsso for his F-serve was a child pornography chatroom.

Any individual who entered Lograsso's F-serve after seeing his advertisement could then access any of Lograsso's collection of child pornography.[3] As with all F-serves, Lograsso also controlled the bartering ratio. That is, he set his F-serve to require that anyone wishing to download his image files must first upload a specified quantify of image files. That is, he could set his F-serve to require that one upload 1000 bytes of image files for every 3000 bytes of image files downloaded. The government believes that Lograsso had a 3 to 1 or a 4 to 1 ratio in his F-serve, but cannot recall the exact ratio. However, the government does know with certainty that Lograsso's F-serve required that image files be uploaded in order for his child pornography to be downloaded. Whether the uploaded files were adult pornography or child pornography, the result is the same: Lograsso received something of value for the child pornography he distributed. Moreover, because Lograsso advertised his F-serve in a child pornography chatroom, it is easily concluded that he would have received some quantity of child pornography images in exchange for the child pornography he distributed.

Lograsso's offense conduct in this case is a classic example

---

[3] Lograsso may also have had a sizable collection of adult pornography, but his collection of child pornography was not insubstantial. A forensic examination of one of his computer files disclosed more than 600 images that involved known child victims, or having come from books/magazines (and therefore involving real as opposed to computer generated children).

of the sort of conduct that warrants additional punishment. In fact, his conduct is more egregious than that of many who will come under the same five-level enhancement. Here, Lograsso was not just bartering or trading child pornography with another individual. His F-serve was like a business, geared to deal in quantity. He advertised his collection, and solicited individuals with an interest in child pornography to add to their own collections by bartering child pornography with him. The most egregious part of Lograsso's business was the lack of control he had over those who entered his F-serve. Minors, mentally disturbed individuals, and child predators had absolute access to Lograsso's child pornography collection, and the number of those individuals who could or did obtain such access was limited only by the number of such individuals who saw his advertisement in the child pornography chatroom.

Lograsso asks this Court to depart from the otherwise applicable guideline sentencing range and place him on probation. The government opposes any departure in this case. In reviewing the various grounds advanced by Lograsso, the government asks this Court to keep in mind, first and foremost, that this is not a case of passive collection of child pornography. This is not a case where an individual collected child pornography for his own use or enjoyment. This is a distribution case, where Lograsso used the vast powers of the Internet to run a child pornography

distribution business, to advertise and distribute his child pornography collection to any person with an interest in child pornography. The fact that he did so for reasons other than pecuniary gain is of no importance. In fact, in some respects, by not charging money for his child pornography, Lograsso made his child pornography more desirable and accessible to a large number of people.

In opposing Lograsso's departure motion the government starts with a simple proposition. Almost without exception, it can be said that for each of Lograsso's proffered departure grounds, he is not an exceptional or unusual case. That is, although the details of his upbringing and his particular mental health issues may differ factually from the circumstances of other child pornography offenders, the differences are in degree only, and not in substance. In the experience of the United States Attorney's Office, and the undersigned Assistant U.S. Attorney, who has personally prosecuted as many as 40 child pornography cases, Lograsso presents before this Court very much like nearly every other child pornography defendant. The government cannot recall a single child pornography defendant who was not suffering from depression at the time of the offense conduct. The government cannot recall a single child pornography defendant that did not seek counseling (and usually evaluation) between the time the case commenced (usually with the execution

of a search warrant, but sometimes with the filing of a complaint) and sentencing.[4] And although it may not have been present in every child pornography case, disadvantaged upbringings and oftentimes, abusive childhoods, are commonplace among child pornography offenders.

Thus, the bottom line is that Lograsso has not presented this Court with any basis that takes him out of the heartland of similarly situated offenders. He presents no basis that makes him either unusual or exceptional. In fact, he fits the profile of child pornography offenders that come before this Court. They tend to be, as stated above, depressed individuals, with social adjustment problems, often that date back to early and disadvantaged childhoods. Besides the similarity Lograsso's

---

[4] Rehabilitation that only begins after the offense conduct is discovered and the defendant is confronted by law enforcement, as occurred here, cannot be found to be extraordinary, as it is not "genuinely voluntary." Cf. United States v. Bennett, 60 F.3d 902, 905 (1st Cir. 1995) (civil suit settlement to pay back victims of fraud that was not "genuinely voluntary" on defendant's part cannot support departure for extraordinary restitution). Nor does Lograsso's unsuccessful effort to cooperate with law enforcement make his case extraordinary. Lograsso did meet with agents and convey information in his possession, but that information was determined to be of little to no value, and fell far shot of substantial assistance. Lograsso, knowing that he cannot question the government's decision not to file a substantial assistance motion under U.S.S.G. 5K1.1, has tried to place his cooperation efforts were they do not belong, in support of his extraordinary rehabilitation efforts. See United States v. Aslakson, 982 F.2d 283, 284 (8th Cir. 1992) (willingness to cooperate and testify against codefendant is not extraordinary acceptance of responsibility and can be awarded only by §5K1.1 motion).

6

upbringing has with many other child pornography offenders, the guidelines specifically reject "a disadvantaged upbringing" as a relevant ground for imposing a sentence outside the applicable guideline range. U.S.S.G. §5H1.12.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____/s/ Timothy Q. Feeley_____
TIMOTHY Q. FEELEY
Assistant U.S. Attorney
(617) 748-3172

June 21, 2004

### CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail (and faxing) a copy of same in an envelope bearing sufficient postage for delivery:

> Steven J. Rappaport, Esq.
> Rappaport & Delaney
> 228 Central Street
> Lowell, MA 01852-2201

This 21st day of June 2004.

_____/s/ Timothy Q. Feeley_____
TIMOTHY Q. FEELEY
ASSISTANT UNITED STATES ATTORNEY

7